## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

ADVANCED MEDICAL GROUP OF
CENTRAL FLORIDA LLC, and VINAY
KATUKURI MD,

      Plaintiffs,

v.                                              Case No.: 25-cv-01132-ACC-LHP

BTL INDUSTRIES, INC., MMP CAPITAL
INC., SPARK MARKETING, INC., AMUR
EQUIPMENT FINANCE, INC., BANLEACO, INC.,
LEAF CAPITAL FUNDING, LLC, and NORTH
MILL CREDIT TRUST,

      Defendants.

_____/

### DEFENDANT MMP CAPITAL INC.'S MOTION
### TO DISMISS COUNTS VIII-X, XII, AND XIV
### OF PLAINTIFFS' AMENDED COMPLAINT

Defendant, MMP Capital Inc. ("MMP"), through undersigned counsel,
hereby respectfully moves this Court to dismiss Counts VIII-X, XII, and XIV of
Plaintiffs'[1] Amended Complaint [Dkt. No. 5] pursuant to Federal Rules of Civil
Procedure 9(b) and 12(b)(3) and (6).  In support of its Motion, MMP states:

### **INTRODUCTION**

Plaintiffs premise all claims against MMP—brought in the improper venue—
on an insufficiently pled agency theory, asserting in a conclusory fashion without
requisite particularity that alleged statements made by Defendant BTL Industries,

_____

[1] Advanced Medical Group of Central Florida LLC ("Advanced Medical") and Vinary Katukuri,
M.D. ("Dr. Katukuri") (collectively, "Plaintiffs").

Inc. ("BTL") somehow translate to representations by MMP. Notwithstanding patently deficient pleading, Plaintiffs, in the Equipment Financing Agreements (singularly, an "EFA"; collectively, the "EFAs"),[2] expressly acknowledged that BTL "is not [MMP's] agent, nor [is MMP] their agent," and agreed that "[n]o representation by [BTL] as to any matter shall bind [MMP]." Now, with buyer's remorse nearly three years after purchasing the medical devices at issue, Plaintiffs claim there was fraud and deception in the transaction and blame third parties for Plaintiffs' apparently unsuccessful business decision. If Plaintiffs have any actionable claims, they lie with the seller of the equipment, BTL, not MMP.

Even if Plaintiffs could attribute BTL's alleged misrepresentations to MMP (which they cannot), Plaintiffs' fraud-based claims[3] fail for lack of particularity pursuant to Federal Rule of Civil Procedure 9(b). Regardless of the basis for dismissal of the fraud claims, however, the remaining conspiracy cause of action requires dismissal for two reasons: (1) there is no actionable underlying tort; and (2) there is no identified agreement between Defendants. The Section 349 claim is wholly without merit and should be dismissed as the alleged actions of MMP are not directed at consumers at large.

Setting aside the foreclosed misattribution of BTL's alleged statements to MMP and the fundamental pleading deficiencies, the claims against MMP should

---

[2] The EFAs are attached to the Amended Complaint as Composite Exhibit B.
[3] Fraud (Count VIII), Violation of New York General Business Law § 349 ("Section 349") (Count IX), Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count X), and Negligent Misrepresentation (Count XIV) (collectively, the "Fraud-Based Claims").

be dismissed based on the mandatory venue selection clause in the EFAs. Plaintiffs' anticipatory arguments to the contrary are unavailing and should be disregarded.

Accordingly, MMP respectfully requests that the Court dismiss the claims against MMP in the Amended Complaint.

## PERTINENT ALLEGATIONS OF THE AMENDED COMPLAINT

### BTL and Plaintiffs

A sophisticated medical practitioner well-versed in the intricacies of medical practice, Dr. Katukuri established Advanced Medical, a limited liability company, to provide gastroenterology services, including those related to aesthetics. (Am. Compl., ¶ 22). Following discussions exclusively with BTL, Plaintiffs purchased three BTL devices. (*Id.*, ¶¶ 22, 28-30, 32-33). Among other things, BTL's employees advised Dr. Katukuri (1) that his personal credit would not be affected by the equipment financing, (2) as to the EFAs' expected interest rate, and (3) that personal assets would not be subject to collection if a default occurred. (*Id.*, ¶ 31). Plaintiffs allege these representations were made by BTL employees as agents of MMP. (*Id.*, ¶ 31).

### The EFAs

On or around November 16, 2022, Advanced Medical entered into the EFAs with MMP, and Dr. Katukuri executed the associated guaranties. (*Id.*, at Comp. Ex. B). The EFAs provide that BTL is the equipment supplier and MMP is the creditor. (*Id.*, at Comp. Ex. B, p. 1). The substantive terms and conditions of the EFAs are contained on a single page. (*Id.*) In a section of the terms and conditions, labeled

"**Disclaimer of Warranties and Claims**," Plaintiffs agreed that (1) BTL "is not [MMP's] agent, nor [is MMP] their agent," (2) "no one, including [BTL], has been authorized to waive or change any term or condition of this EFA," and (3) "[n]o representation by [BTL] as to any matter shall bind [MMP]." (*Id*.). Plaintiffs also agreed to a mandatory forum selection clause and to an integration clause disclaiming any representation contrary to those set forth therein, as follows:

> This EFA shall be governed by and construed under the laws of the State of New York (NY), without reference to its principles of conflicts of laws, and is deemed to have been performed in Nassau County, NY. You submit to and agree that the state courts sitting in Nassau County, New York, or any federal court having jurisdiction over Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce this EFA or any action or proceeding arising under this EFA.
>
> * * *
>
> This EFA sets forth the entire understanding of the parties with respect to its subject matter and may only be amended in a writing signed by both parties, except as otherwise stated in the section above titled "Agreement."

(*Id*.).

The Guaranty executed by Dr. Katukuri expressly sets forth his agreement that MMP "can proceed directly against you without first proceeding against [Advanced Medical] or the Collateral (as defined in the EFA)." (*Id*., Comp. Ex. B, p. 2). Further, Dr. Katukuri agreed that "THIS GUARANTY WILL BE GOVERNED BY NEW YORK LAW. YOU AGREE TO JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS AS SET FORTH IN THE EFA." (*Id*.) (capitalization in original).

**Claims Against MMP**

<u>In Count VIII</u>, Plaintiffs contend that MMP engaged in fraud based on BTL's act of furnishing the EFAs to Plaintiffs in referring them to MMP for financing, and alleged representations made by BTL to Plaintiffs—representations which, as agreed upon in the EFAs, are not binding upon MMP. (*Id.*, ¶¶ 116-18, Comp. Ex. B, p. 1). As to the former, Plaintiffs claim without explanation that they "had no way to confirm the interest rate in the agreements" (*see id.*, ¶ 116) yet fail to offer any details substantiating such a claim, including why Plaintiffs did not simply contact MMP for clarification as to the payment terms. Moreover, Plaintiffs had readily available the means to ascertain the interest rate, as Plaintiffs could have reviewed the price quotations (*see* Am. Compl., Comp. Ex. A) in conjunction with the correlating Monthly Installment Payments and Term set forth in the EFAs (*see id.*, Comp. Ex. B).

As to the latter, Plaintiffs identify several generalized statements, wanting in detail, purportedly made by BTL employees—whom Plaintiffs frame as "agents of MMP"—that (1) Plaintiffs could return the equipment if the investment does not work out without a penalty (which defies common sense); (2) equipment financing would not impact Dr. Katukuri's personal credit (at no point in the Amended Complaint do Plaintiffs allege Dr. Katukuri's personal credit has been impacted); (3) the interest rate for the purchase of Emsculpt NEO would be 6.8% (at no point in the Amended Complaint do Plaintiffs allege the actual interest rate, if it is not 6.8%, nor do they claim the stated interest rate is incorrect; this allegation lacks

requisite particularity); and (4) Dr. Katukuri's personal assets would not be subject to collection should a default occur (which representation, if made, was later clarified, adequately covered, and contradicted by the Guaranty reviewed and signed by Dr. Katukuri). (*Id.*, ¶¶ 117-21). All four purported statements have the same thing in common: there are no allegations setting forth the "who, where, when, how" details that are critical when pleading fraud. (*See id.*).

In Count IX, Plaintiffs contend that, based on the loosely alleged misrepresentations made by BTL related to interest rates and the return of equipment, MMP (who did not make the representations) engaged in "bait and switch tactics." (*Id.*, ¶ 127). Notwithstanding their ability to inquire at pre-EFA as to the interest rate, Plaintiffs also allege that MMP's failure to include a stated interest rate in the EFAs "poses a substantial risk to the public." (*Id.*, ¶ 126). To be clear, the EFAs disclose on their faces the specific amount and term of monthly payments, such that the customer knows exactly how much they are paying and, after reviewing, agrees to the same. (*See id.*, Comp. Ex. B, p. 1).

In Count X, the FDUTPA cause of action, Plaintiffs simply refer to MMP's "actions described above" and contend, without identifying the specific actions, that they constitute unfair or deceptive acts or practices. (*Id.*, ¶ 131).

In Count XII for civil conspiracy, Plaintiffs simply describe—with hyperbolic language—the separate business relationship among MMP, BTL, and Spark Marketing related to the sales, marketing, and financing of BTL's devices; there is no unison between the relationships. (*Id.*, ¶¶ 140-44). Indeed, Plaintiffs allege only

that BTL markets its products, that MMP provides the necessary financing documents to BTL, that BTL (framed as MMP) provides the EFAs to customers, and that Spark Marketing provides a marketing service to BTL. (*Id.*). No underlying tort is identified. (*Id.*).

<u>In Count XIV</u> for negligent misrepresentation, Plaintiffs contend that BTL's purported representations—again, misattributed to MMP—to Plaintiffs regarding the EFAs were misrepresentations that MMP, an uninvolved party, should have known were false. (*Id.*, ¶¶ 147-48).

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion, the Court must review the complaint in a light most favorable to plaintiff, accepting well-pleaded facts as true. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## ARGUMENT

There are numerous grounds warranting dismissal of the causes of action against MMP. The Fraud-Based Claims should be dismissed for failure to state a cause of action, as those counts necessarily require allegations setting forth representations made by MMP—there are none. Even assuming Plaintiffs sufficiently pled an agency relationship between BTL and MMP—which they have

not—Rule 9(b) contains heightened pleading requirements[4] that are unmistakably absent from the Amended Complaint. Plaintiffs' remaining claim against MMP—the conspiracy action—also fails to state a cause of action, as there is neither an actionable underlying tort, nor adequately pled allegations identifying an agreement among the alleged conspirators.

Should Plaintiffs somehow edge past the fatal deficiencies in the claims against MMP, the EFAs contain mandatory forum selection clauses that establish this venue is improper; thus, dismissal is required for that additional reason. MMP requests that the Court enter an Order dismissing Counts VIII, IX, X, XII, and XIV.

## I. Plaintiffs' Fraud-Based Claims Should be Dismissed for Failure to State a Claim

Each of the Fraud-Based Claims—common law fraud, violations of Section 349 and FDUTPA, and negligent misrepresentation—require a preliminary showing of a deceptive act or misrepresentation made by MMP.[5] Plaintiffs have made no such showing, nor could they. So, Plaintiffs rely exclusively on the statements allegedly made by BTL and its purportedly deceptive acts. Rather than focus its action against BTL—the alleged actual maker of the statements and/or the

---

[4] As covered below, the heightened pleading standard applies to Plaintiffs' causes of action for fraud, FDUTPA, negligent representation, and conspiracy.

[5] To sufficiently plead a violation of FDUTPA, Plaintiffs must allege that MMP engaged in a deceptive act or unfair practice; to sufficiently plead a claim for fraudulent or negligent misrepresentation, Plaintiffs must show that MMP made a false statement or misrepresentation. *See Kurimski v. Shell Oil Company*, 570 F. Supp. 3d 1228, 1242, 1249-50 (S.D. Fla. Nov. 8, 2021) (applying Florida law). As it relates to a claimed violation of Section 349, Plaintiffs must show that MMP committed a deceptive act. *See Stutman v. Chemical Bank*, 731 N.E. 2d 608, 613 (N.Y. 2000) (dismissing Section 349 claim because "plaintiffs have failed to show that defendant committed a deceptive act").

alleged instigator of the supposedly deceptive acts—Plaintiffs, in conclusory fashion, attribute BTL's conduct to MMP by baldly claiming an agency relationship. No such relationship exists; indeed, the EFAs specifically disclaim such relationship. (Am. Compl., Comp. Ex. B, pp. 1, 3[6]).  Moreover, Plaintiffs agreed that no representation by BTL is binding upon MMP. (*Id*.).

For these reasons, the Fraud-Based Claims must be dismissed.

### A.    *Because BTL's employees are not agents of MMP, Plaintiffs do not sufficiently allege any representations made by MMP, nor identify any deceptive act or unfair practice of MMP.*

Plaintiffs specifically agreed that there is no agency relationship between BTL and MMP. (*Id*.). The express disclaimer of agency found in the EFAs "is palpable evidence that [MMP] did not intend to consent or acquiesce to an agency relationship with [BTL]." *Commodity Futures Trading Com'n v. Gibraltar Monetary Corp., Inc.*, 575 F.3d 1180, 1189 (11th Cir. 2009).  Nevertheless, express or implied agency requires (1) consent to the agency by both the principal and agent; and (2) the control of the agent by the principal. *Id*.

The plain language of the EFAs, including the disclaimers of agency and BTL's representations, demonstrates that MMP did not consent to an agency relationship. *See id*. There are no allegations purporting to show that MMP controlled BTL; Plaintiffs merely allege that "BTL teams up with MMP" and "MMP

---

[6] In paragraph 3 of the Equipment Acceptance Certificate, Plaintiffs acknowledged and agreed that "[n]either [BTL] nor any of its salespersons or other agents are agents of ours or are authorized to waive or modify any term or condition of this Acceptance Certificate, the EFA and/or related documents."

[ ] allows and encourages BTL to [make] misrepresent[ations]." (Am. Compl., ¶ 26). An agent does not "team up" with the principal; rather, the principal controls the agent, which requires much more. *See Gibraltar*, 575 F.3d at 1190 (indicating that control typically arises in situations where the principal is involved in hiring, training, supervision, or disciplining the agent's employees; supervises or controls strategies; mandates certain actions by the agent; or establishes customer criteria); *see also Hossfeld v. Am. Financial Security Life Ins. Co.*, 544 F. Supp. 3d 1323, 1332 (S.D. Fla. 2021) ("Plaintiff must allege enough facts to show that [the principal] exercised *substantial* control over the . . . agents' actions, ratified the agents' conduct, or represented that the agents acted with authority from [the principal].") (emphasis added).[7]

Because Plaintiffs fail to set forth sufficient factual allegations tending to establish an agency relationship in the face of an express disclaimer of same, the Court should not attribute the actions of BTL to MMP. Accordingly, MMP made no identifiable representations, nor did it act in any deceptive or unfair way. Given that Plaintiffs' claims for fraud, negligent misrepresentation, and violations of FDUTPA and Section 349 wholly rely on BTL's—not MMP's—representations and actions, those claims must be dismissed.

---

[7] To the extent Plaintiffs argue that MMP ratified BTL's conduct in making the alleged misrepresentations, their argument is contradicted by the EFAs, wherein MMP expressly states that no representation by BTL is binding upon MMP. (Am. Compl., Comp. Ex. B, p. 1). In other words, MMP expressly did *not* consent to representations made by BTL.

**B.** ***Plaintiffs may not rely on representations made by BTL's employees that were expressly disclaimed and do not bind MMP.***

For each of the Fraud-Based Claims, Plaintiffs rely on representations made by BTL. Plaintiffs specifically agreed that BTL's representations are not binding upon MMP, and that MMP "makes no representation or warranty to any matter whatsoever." (Am. Compl., at Comp. Ex. B, p. 1). Further, Plaintiffs agreed that each "EFA sets forth the entire understanding of the parties with respect to its subject matter." *Id.* A plaintiff "cannot recover for fraudulent misrepresentations that are covered in or contradicted by a later written agreement." *Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273, 1275 (Fla. 4th DCA 2003) (considering contractual language, including statement that the seller "makes no express or implied warranties or representations of any kind," and affirming dismissal) (citing *Hillcrest Pac. Corp. v. Yamamura,* 727 So. 2d 1053 (Fla. 4th DCA 1999)); *see also Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007).

The Southern District in *Garcia* considered contractual language stating, *inter alia*, that "oral representations cannot be relied upon as correctly stating the representations of the developer. For correct representations, reference should be made to this contract." *Garcia*, 528 F. Supp. 2d at 1289. In noting that negligent misrepresentation, like fraudulent misrepresentation, requires reliance, the *Garcia* panel found that, because "[r]eliance on fraudulent representations is unreasonable *as a matter of law* where the alleged misrepresentations contradict

the express terms of the ensuing written agreement," the claims must be dismissed with prejudice as "[n]o reliance could be reasonable in the face of [the] express statement." *Id.* at 1295 (emphasis in original) (also noting that a "party who signs an instrument is presumed to know its contents.... *He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions*") (emphasis in original).[8]

In *Rosa v. Amoco Oil Co.*, the court considered the argument that "Plaintiff's signing of a contract whose terms expressly contradicted the alleged misrepresentations on which he relied bars him from seeking relief pursuant to FDUTPA, as he acted unreasonably," and because "Plaintiff's reliance upon oral statements . . . were at variance with the written documents [and thus] were not reasonable as a matter of law," found that "Plaintiffs FDUTPA claim must be dismissed." 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003). This reasoning applies equally here with respect to the Section 349 claim, as that section requires a similar showing as is necessary for a FDUTPA claim. *See JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 2010 WL 4868142, at *11-12 (N.Y. Sup. Ct. 2010) (because a plaintiff must plead a deceptive act or practice that is objectively *materially* misleading to a *reasonable* consumer, the plaintiff's claim

---

[8] The same applies to Plaintiffs' allegations regarding the purported representation that Dr. Katukuri's personal credit would not be impacted by a default, as Dr. Katukuri reviewed and signed by the Guaranty that expressly states that Dr. Katukuri "agree[s] that this is a guaranty of payment, not collection, and that [MMP] can proceed directly against **you** without first proceeding against [Advanced Medical] or the Collateral." (Am. Compl., Comp. Ex. B., p. 2).

was insufficient as a matter of law; it could not succeed in the face of contractual language disclaiming reliance on prior representations/advice).

For these reasons, Counts VIII, IX, X, and XIV are due for dismissal.

## II. Plaintiffs' Section 349 Claim Fails Because the EFAs are Not Directed to Consumers Generally

As a prerequisite to a Section 349 claim, Plaintiffs must show the EFAs were directed to consumers generally; this issue may be resolved as a matter of law. *Controladora*, 2010 WL 4868142, at *11-12. "To be consumer-oriented, the conduct 'must have a broad impact on consumers at large' engaging in small scale transactions[.] [citing (*New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 320 [1995]. [Section] 349 was not intended to cover big-dollar financial transactions between private and sophisticated parties, like those at issue here." *Id.* at *11. "Thus, where the 'contract at issue was a private, arm's length business transaction between two sophisticated entities, each with substantial prior experience in the relevant field,' the conduct is not targeted at consumers." *Id.* (citing *U.W. Marx, Inc. v. Bonded Concrete, Inc.,* 776 N.Y.S. 2d 617, 619 (N.Y. App. Div. 3d Dept. 2004) (holding that complaint could not be amended to add a claim under Section 349 because "this was a complex private business transaction, not one based on a standard-form contract addressed to consumers generally")).

Here, despite convenient assertions to the contrary, Plaintiffs are sophisticated parties: Dr. Katukuri is a well-versed medical practitioner with over

27 years of experience, who holds at least one medical specialization,[9] and he is the manager and registered agent for Advanced Medical.[10] It is axiomatic that he has experience and/or knowledge with regard to the purchase of medical devices. The business dealings with BTL, and the resultant entry into the EFAs, are the product of private, arm's length dealings. The EFAs are not intended for the general public; they are for a specific sector of medical practice. It cannot be reasonably construed that the EFAs, or the related representations made by BTL, have a "broad impact on consumers at large" with respect to small-scale transactions. *See Controladora*, 2010 WL 4868142, at *11-12. Therefore, the Section 349 claim is insufficient as a matter of law and must be dismissed. *Id.* at *12.

### III.  Counts VIII, X, XII, and XIV Should be Dismissed for Failure to Satisfy Rule 9(b)'s Heightened Pleading Requirements

For claims of fraud or negligent representation, Plaintiffs must comply with the heightened pleading standard of Rule 9(b). *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims."). The same pleading requirement applies to FDUTPA claims that sound in fraud, *see Pop v.*

---

[9]  *See* National Provider Identifier for Dr. Katukuri, identifier no. 1992860597, https://npiprofile.com/npi/1992860597 (last accessed September 20, 2025). The Court may take judicial notice of facts not subject to reasonable dispute that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

[10] *See* Sunbiz.org records of Advanced Medical, as maintained by the Florida Department of State, Division of Corporations, https://shorturl.at/964iV (last accessed September 20, 2025). "Judicial notice of [a] Sunbiz filing is appropriate here because the records are publicly available on the Florida Department of State's website, at www.sunbiz.org." *Bosco v. Russian*, 2025 WL 2083417, at *2 n.1 (M.D. Fla. Jan. 3, 2025) (citing *Demeter v. Little Gasparilla Island & Fire Rescue, Inc.*, WL 662006, at *2 (M.D. Fla. Feb. 17, 2017) (taking judicial notice of a party's Sunbiz profile at the dismissal stage); Fed. R. Evid. 201(b), (b)(2)).

*LuliFama.com LLC*, 145 F.4th 1285, 1294 (11th Cir. 2025), and conspiracy claims that sound in fraud. *See Allstate Indem. Co. v. Fla. Rehab & Injury Centers Longwood, Inc.*, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (citing *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007)).

Under Rule 9(b), "a party must state *with particularity* the circumstances constituting fraud or mistake." *Pop*, 145 F.4th at 1293 (emphasis in original). This requirement is well understood to mean the opposite of what Plaintiffs have done here:

> allege the 'who, what, when, where, and how' of the fraudulent conduct. [citation omitted]. Stated differently, the plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud.

*Id.* (cleaned up).

As discussed, none of the purported representations attributed to MMP by way of a brittle and unavailing agency theory have the factual substance required by Rule 9(b). Plaintiffs allege nothing more than obscurely stated, sweeping "misrepresentations" that completely lack in substantive content—there is no preciseness as to the actual statements made; nor is there sufficient identification of time, place, or person. Moreover, Plaintiffs do not offer any explanation as to how the alleged misrepresentations regarding credit, interest rates, or collection in any way materially induced Plaintiffs into reliance, which purported reliance is, at best, unreasonable and unactionable. Plaintiffs' FDUTPA claim fares no better; it is utterly vacant of any ascertainable allegations, except for vague reference to

"actions described above," which are not described in any manner close to what is required to survive this Motion. And the conspiracy claim "lacks sufficient detail as to the alleged plot itself," and "is replete with conclusory allegations [without] any factual support for such conclusions." *Florida Rehab*, 2016 WL 7177624, at *4.

Without compliance with Rule 9(b), Counts VIII, X, XII, and XIV are insufficiently pled and require dismissal.

## IV.    Plaintiffs' Conspiracy Cause of Action (Count XII) Should be Dismissed for Failure to State a Claim

Though Plaintiffs claim to allege a conspiracy, the allegations merely identify what could be considered a dual-bilateral business arrangement. In sum, Plaintiffs illustrate a business relationship between MMP and BTL, whereby MMP financed the devices BTL sells; a separate business relationship between BTL and Spark Marketing, whereby BTL refers customers to Spark Marketing for marketing services; *but* significantly, Plaintiffs fail to show any form of relationship between MMP and Spark Marketing. (*See* Am. Compl., ¶¶ 140-44). Otherwise stated, Plaintiffs have not sufficiently alleged an agreement between MMP, BTL, and Spark Marketing. The inability to do so is the product of impossibility, evidenced by Plaintiffs' failure to meet the Rule 9(b) threshold.

With more than general allegations, Plaintiffs are required to show (a) an agreement between MMP, BTL, and Spark Marketing, (b) to do an unlawful act by unlawful means, (c) the doing of some overt act in furtherance, and (d) resulting damage. *GE Real Estate Services, Inc. v. Mandich Real Estate Advisors, Inc.*, 337

So. 3d 416, 420 (Fla. 3d DCA 2021). And with Rule 9(b)'s standard in mind, the pleading "must set forth clear, positive, and specific allegations of civil conspiracy." *Id.* (citation omitted). Plaintiffs may not "assume or speculate that [MMP, BTL, and Spark Marketing] participated in a conspiracy merely because they ultimately received some benefits from the [respective bilateral relationships]"; that "is insufficient for the imposition of liability against them." *Id.* at 421 (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1285 (Fla. 3d DCA 1997) and citing *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012)) (cleaned up).

Plaintiffs' allegations in Count XII do not comply with the above (nor Rule 9(b)). As a result, Plaintiffs fall short of plausibly alleging the elements required for civil conspiracy—there is no proper allegation of agreement as discussed above; there are no specific allegations regarding the unlawfulness of the purported acts; and there is no specificity as to damage.

Even assuming *arguendo* that Plaintiffs have sufficiently alleged the above-identified factors supplied in *GE Real Estate*, Plaintiffs do not set forth the final, critical element of a conspiracy claim: allegations that the conspiracy had as its objective the commission of an underlying tort. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009). Even if Plaintiffs were to point to the Fraud-Based Claims, those claims are subject to dismissal as addressed herein, and, if dismissed, the result is an absence of underlying tort. *See Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339,

1345 (M.D. Fla. 2008) ("Because all tort claims asserted by Plaintiffs have been dismissed, there is no actionable underlying tort left to support their conspiracy claim.").

For these reasons, MMP requests that Count XII be dismissed.

## V.    All Claims Against MMP Should be Dismissed for Improper Venue

Plaintiffs recognize the existence of a binding, mandatory venue selection clause contained in the EFAs[11], and, to avoid it, offer the Court three unavailing reasons for its purported inapplicability. Notwithstanding the complete absence of allegations indicating any identifiable direct connection between MMP and Spark Marketing, Plaintiffs contend that the Court should not enforce the venue clause because (1) the causes of action against MMP and Spark Marketing[12] arise out of the same conduct or occurrence as the claims against BTL; (2) BTL acted as MMP's and Spark Marketing's agent (separately); and (3) there would be a risk of wasted judicial resources and inconsistent judgments. (Am. Compl., ¶ 7).

It is well settled in Florida that parties to an agreement "may provide therein where a suit may be brought to enforce it if such should become necessary." *Four Star Resorts Bahamas, Ltd. v. Allegro Resorts Mgmt. Servs., Ltd.*, 734 So. 2d 576, 577 (Fla. 3d DCA 1999) (citing *Producers Supply, Inc. v. Harz*, 6 So. 2d 375, 376 (Fla. 1942)). The forum selection clause at issue is clearly mandatory, as it contains

---

[11] The text of the venue selection clause is set forth *supra*, page 4.
[12] Notably undercutting Plaintiffs' position, Spark Marketing was dismissed with prejudice on September 15, 2025 [Dkt. No. 56]. This argument is moot.

incorporates the use of the terms "shall" and "exclusive," and as such, must be "given controlling weight in all but the most exceptional cases." *Don't Look Media LLC v. Fly Victor Limited*, 999 F.3d 1284, 1297 (11th Cir. 2021). Such "clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Intern. Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see also Golden Palm Hosp., Inc. v. Stearns Bank Nat. Ass'n*, 874 So. 2d 1231, 1235 (Fla. 5th DCA 2004). It is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 18 (1972).With this standard, "the party seeking to avoid a 'forum-selection clause bears a heavy burden of proof.'" *Geico Marine Ins. Co. v. Amzim Marine Servs., LLC*, 641 F. Supp. 3d 1292, 1299 (M.D. Fla. 2022) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991)).

Looking past Plaintiffs' characterization of the connexity between its claims against MMP, BTL, and Spark Marketing, Plaintiffs' claims against MMP are separable from their claims against BTL and Spark Marketing. A separate contract is involved—the EFA. A separate timeline related to separate events is involved— pre-EFA representations related to the financing of the devices, versus BTL-device/sales-related representations related to the devices and their expected

19

profitability and marketability. The claims, while tangentially related, do *not* arise out of the *same* conduct or occurrence. And, as discussed, Plaintiffs' conclusory allegations of agency relationships among the defendant parties holds no water.

The only claim alleged against MMP, BTL, and (now dismissed party) Spark Marketing jointly is a facially deficient, unsalvageable conspiracy action that is subject to dismissal. Otherwise, given the separability of the causes of action as against the separate parties, there is no risk of inconsistent results as Plaintiffs' claims against MMP will all be tried in the same forum—Plaintiffs fully retain the ability to proceed in the contractual forum without risk of being deprived of their day in court. While judicial inefficiency may be a compelling reason to ignore a mandatory forum selection clause in exceptional circumstances, those circumstances are not present here.

Indeed, *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 2011 WL 4389905, at *6 (S.D. Fla. Sept. 21, 2011), is instructive. There, the Southern District considered an argument that judicial inefficiency and the risk of inconsistent results militated against enforcement of a forum clause. *Id.* In rejecting that argument, the *Quail* panel observed that all claims against one party would be tried in one forum; "therefore, there can be no risk of inconsistent judgment or results. And while there may be some duplication of effort resulting in parallel proceedings, it is insufficient to overcome the strong presumption" favoring enforceability. *Id.*

Because Plaintiffs, without the strong showing that enforcement of the clause will effectively result in no forum at all, fail to meet the exceptional circumstances required to overcome the EFAs' mandatory forum selection clause, the clause must be enforced. As a result, the claims against MMP in the Amended Complaint must be dismissed.

## VI.   To the Extent Plaintiffs' Federal Claims Against BTL are Dismissed with Prejudice, this Court Lacks Subject-Matter Jurisdiction

Plaintiffs allege this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. (Am. Compl., ¶ 2). There are two federal causes of action against BTL, and the remaining causes of action against all other Defendants are state law claims. BTL filed its motion to dismiss [Dkt. No. 48] requesting dismissal of the claims against it with prejudice. Should the Court grant BTL's motion, there will be no grounds for subject-matter jurisdiction and the Amended Complaint must be dismissed.

## **CONCLUSION**

Counts VIII-X, XII, and XIV must be dismissed as set forth above. There are no tenable causes of action against MMP. Even if there were, the mandatory forum selection clause additionally requires dismissal. And, assuming BTL's motion to dismiss is granted, this Court is without subject-matter jurisdiction.

Accordingly, Defendant MMP Capital Inc. respectfully requests that the Court enter an Order granting this Motion; dismissing Counts VIII-X, XII, and XIV; and awarding such other and further relief as the Court deems appropriate.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

I HEREBY CERTIFY that undersigned counsel attempted to confer via e-mail with Plaintiffs' counsel on September 21 and 22, 2025, and by way of phone call on September 22, 2025, in a good faith effort to resolve the issues raised in the Motion and received no response prior to filing.

**STINSON LLP**

*/s/ C. Cade Zimmerman*
Brian R. Cummings
Florida Bar No.: 25854
C. Cade Zimmerman
Florida Bar No.: 1039170
STINSON LLP
100 S. Ashley Drive, Suite 500
Tampa, FL 33602
Telephone: (813) 534-7334
brian.cummings@stinson.com
cade.zimmerman@stinson.com

*Attorneys for Defendant MMP Capital Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 22nd day of September, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ C. Cade Zimmerman*
C. Cade Zimmerman